I1NAKOSHps

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

                v.                          18-cr-30 (PAC)

MEDIN KOSIC, et al.,

                Defendants.

------------------------------x

                                        New York, N.Y.
                                        January 23, 2018
                                        11:15 a.m.


Before:

                    HON. PAUL A. CROTTY

                                        District Judge


                        APPEARANCES

GEOFFREY S. BERMAN
        Interim United States Attorney for the
        Southern District of New York
BY:  CATHERINE C. GEDDES, ESQ.
        STEPHANIE L. LAKE, ESQ.
        Assistant United States Attorneys

FEDERAL DEFENDERS OF NEW YORK INC.
        Attorneys for Defendant Kosic
BY:   SABRINA P. SHROFF, ESQ.

ZEMAN & WOMBLE
        Attorneys for Defendant Manen
BY:  KENNETH WOMBLE, ESQ.

GOLDBERGER & DUBIN, P.C.
        Attorneys for Defendants Mirsad Bogdanovic
        and Jasmin Cejovic
BY:  LAWRENCE A. DUBIN, ESQ.

I1NAKOSHps

1    APPEARANCES (Cont'd)

2    STAMPUR & ROTH
          Attorneys for Defendant Sullivan
3    BY:  WILLIAM STAMPUR, ESQ.

4    THE LAW FIRM OF CESAR DE CASTRO, P.C.
          Attorneys for Defendant Banasku
5    BY:  CESAR DE CASTRO, ESQ.

6    LAW OFFICE OF NATALI J.H. TODD P.C.
          Attorneys for Defendant Francese
7    BY:  NATALI J.H. TODD, ESQ.

8    THOMAS AMBROSIO, ESQ.
          Attorney for Defendant Bucci

9
     ABRAHAM HASSEN, ESQ.
10        Attorney for Defendant Charlton

11   LAW OFFICE OF LAW OFFICE OF MEREDITH S. HELLER PLLC
          Attorneys for Defendant Jennifer Bogdanovic
12   BY:  MEREDITH S. HELLER, ESQ.

13
     Also Present:  Lea Harmon
14                  U.S. Pretrial Services Officer

15

16        (In open court)

17        THE CLERK:  Your Honor, this is in the matter of

18   Docket No. 18-cr-30, United States of America v. Medin Kosic,

19   et al.

20        Counsel for the government, please state your

21   appearance.

22        MS. GEDDES:  Good morning, your Honor.  Catherine

23   Geddes for the United States.  And I'm joined by my colleague,

24   Stephanie Lake.

25        MS. LAKE:  Good morning.

I1NAKOSHps

1          THE COURT:  Ms. Geddes, Ms. Lake.

2          MS. SHROFF:  Good morning, your Honor.  On behalf of

3    Mr. Kosic, who is seated in the jury box, second row, furthest

4    to the right, Federal Defenders of New York, by Sabrina Shroff.

5          THE COURT:  OK.  Mr. Kosic, could you raise your hand.

6    Are you Mr. Kosic?

7          DEFENDANT KOSIC:  Yes, sir.

8          MR. DUBIN:  Good morning, Judge.  Lawrence Dubin for

9    Mr. Bogdanovic, who is the second seated defendant closest to

10   the window, and also covering for Mr. Kenneth Paul on

11   Mr. Cejovic.

12         THE COURT:  Mr. Cejovic is?

13         MR. DUBIN:  He's on bail, Judge.

14         THE COURT:  OK.  Thank you, Mr. Dubin.

15         MR. DUBIN:  You're welcome.

16         THE COURT:  Thank you.

17         MR. DE CASTRO:  Good morning.  For Mr. Banasku, Cesar

18   De Castro.  Mr. Banasku is raising his hand in the jury box,

19   your Honor.

20         THE COURT:  Good morning.

21         MR. WOMBLE:  Good morning, your Honor.  Ken Womble for

22   Paul Van Manen, middle second row in the back raising his hand.

23         THE COURT:  Good morning.  Thank you, Mr. Womble.

24         MR. WOMBLE:  Your Honor, William J. Stampur, standing

25   in for my partner James Roth.  I'm representing Shaun Sullivan,

I1NAKOSHps

| | |
|---|---|
| 1 | who is in the first row, just raised his hand, your Honor. |
| 2 | THE COURT:  Good morning, Mr. Sullivan.  Thank you, |
| 3 | Mr. Stampur. |
| 4 | MR. AMBROSIO:  Good morning, your Honor.  Thomas |
| 5 | Ambrosio on behalf of Alexander Bucci, who is in the first row. |
| 6 | THE COURT:  Mr. Bucci.  Thank you, Mr. Ambrosio. |
| 7 | MR. HASSAN:  Abraham Hassan standing in for my |
| 8 | partner, Grainne O'Neill.  I'm representing Mr. Charlton. |
| 9 | THE COURT:  Good morning.  Thank you, Mr. Hassan. |
| 10 | MS. TODD:  Good morning, your Honor.  Natali Todd for |
| 11 | Anthony Francese, who is out on bail.  And he is not here as of |
| 12 | this moment.  I have received four phone calls, the first one |
| 13 | at 8:30 this morning, that he was taking the bus.  And then |
| 14 | there was some major problem with the bus, so then he decided |
| 15 | to take the ferry.  The last phone call I received was at 10:46 |
| 16 | this morning, that the ferry was about ten minutes from |
| 17 | arriving at the court.  So I'm assuming he should be here |
| 18 | shortly, and I apologize, Judge, but I will get more |
| 19 | information when he arrives.  But I am assured he is on his |
| 20 | way. |
| 21 | THE COURT:  OK.  Thank you, Ms. Todd. |
| 22 | THE CLERK:  Meredith Heller? |
| 23 | THE COURT:  Is Jennifer Bogdanovic here? |
| 24 | Yes.  Do you know where your lawyer is, |
| 25 | Ms. Bogdanovic? |

I1NAKOSHps

1          Mr. Hassan?

2          MR. HASSAN:  Your Honor, I got a text from my partner,

3     from Ms. Heller, if I could stand in for Her.

4          THE COURT:  You're going to appear for Ms. Bogdanovic?

5     OK.  With all defendants, then, with the exception of

6     Mr. Francese, who is in transit, I guess we'll proceed to

7     arraignment on the charges.

8          I will ask each of the defendants whether they have

9     received a copy of the indictment?

10          MS. SHROFF:  Your Honor, Mr. Kosic has in fact seen a

11     copy of the indictment.  He has reviewed it.  And he waives its

12     public reading and would enter a plea of not guilty.

13          THE COURT:  OK.  Not guilty for Mr. Kosic.

14          MR. DUBIN:  Your Honor, with regard to Mirsad

15     Bogdanovic, he has received a copy of the indictment.  I went

16     over it carefully with him.  He's read it.  He waives the

17     public reading of it.  And I would ask your Honor to enter a

18     plea of not guilty.

19          THE COURT:  OK.  So a plea for Mr. Bogdanovic, Mirsad

20     Bogdanovic, will be entered, not guilty.

21          MR. DE CASTRO:  For Mr. Banasku, he has received a

22     copy of the indictment.  We've reviewed it.  We ask that you

23     enter a plea of not guilty.  And we waive its public reading.

24          THE COURT:  OK.  A plea of not guilty will be entered

25     for Mr. Banasku.

I1NAKOSHps

1        MR. WOMBLE:  For Mr. Van Manen, he has received a copy

2   of the indictment.  We have reviewed it.  We waive its public

3   reading and enter a plea of not guilty.

4        THE COURT:  A plea of not guilty will be entered for

5   Mr. Van Manen.

6        MR. STAMPUR:  Judge, with respect to Shaun Sullivan, I

7   reviewed the indictment with him this morning.  We waive its

8   public reading.  And he is prepared to enter a not guilty plea.

9        THE COURT:  All right.  A plea of not guilty for

10  Mr. Sullivan.

11       MR. AMBROSIO:  Your Honor, on behalf of Mr. Alexander

12  Bucci, he has reviewed the indictment with me.  We'll waive a

13  further reading and enter a plea of not guilty.

14       THE COURT:  A plea of not guilty is entered for

15  Mr. Bucci.

16       MR. HASSAN:  Mr. Charlton, we reviewed the indictment.

17  He is ready to enter a plea of not guilty.  And we waive the

18  reading.

19       THE COURT:  Mr. Charlton, OK.

20       And do you want to do the same thing for

21  Mr. Bogdanovic?

22       MS. HELLER:  Actually, I will, your Honor.  I

23  apologize for my lateness.  Meredith Heller on behalf of

24  Jennifer Bogdanovic.  We have reviewed --

25       THE COURT:  You're here for the important part.

I1NAKOSHps

1          MS. HELLER:  We're here for the important part,
2     exactly.
3          We have reviewed the indictment, waive the public
4     reading, and she enters a plea of not guilty.
5          THE COURT:  Thank you, Ms. Heller.  A plea of not
6     guilty will be entered for Ms. Bogdanovic.
7          Does that take care of everybody -- with the exception
8     of you, Ms. Todd.
9          MS. TODD:  Yes, your Honor.
10          THE COURT:  We'll just -- maybe Mr. Francese will
11     appear.
12          MS. TODD:  Yes.
13          THE COURT:  Mr. Dubin, do you want to enter a plea for
14     Mr. Cejovic?
15          MR. DUBIN:  Yes.  Forgive me.  But yes, sir.  I was
16     there when his lawyer went over the indictment with him, before
17     the magistrate's hearing was held.  He understands the charges
18     pending against him.  He waives the public reading.  And I
19     would ask that your Honor enter a plea of not guilty for him.
20          THE COURT:  A plea of not guilty will be entered for
21     Mr. Cejovic.
22          Does that take care of everybody we have?
23          MS. SHROFF:  Yes, your Honor.
24          THE COURT:  All right.  Government, do you have --
25     what kind of discovery do you want to produce?

I1NAKOSHps

1          MS. GEDDES:  Yes, your Honor.  Today we have begun

2     handing out and have envelopes for the remaining defendants.

3     The majority of the discovery, which includes line sheets,

4     recordings, and affidavits for the wires that were up in this

5     case.  We have also produced or are producing today documents

6     related to their arrests.  There is a bit of remaining

7     discovery but not much, primarily lab reports and a few more

8     search warrant affidavits.  The bulk is being produced to

9     everyone today, and the remainder will be produced within one

10    week.

11          THE COURT:  The remainder will be produced when?

12          MS. GEDDES:  Within one week, your Honor.

13          THE COURT:  All right.  And how much was it,

14    Ms. Geddes, in terms of volume?  A banker's box?  Two banker's

15    boxes?

16          MS. GEDDES:  They were electronic, so I don't know how

17    many banker's boxes.  Believe it was, in terms of Bates

18    numbers, up to the 10,000 range, if I'm remembering correctly.

19    There were a lot of line sheets to produce.  That's the primary

20    source of the pages.

21          THE COURT:  And what does the time frame involve?

22          MS. GEDDES:  The conspiracy is charged back to 2015.

23    The wires themselves began last summer and would cover

24    approximately four or five months.

25          THE COURT:  All right.

I1NAKOSHps

1          Ms. Shroff and the others, how much time do you want

2     to review the material, approximately 10,000 documents?

3          MS. SHROFF:  Your Honor, we would ask for 60 days.

4          (Pause)

5          MS. SHROFF:  I guess 90 days is the request.

6          THE COURT:  No, I won't do 90 days.  I'll do 60 days.

7     And we'll just -- I like to have a control date in there.  I'm

8     not -- you don't have to complete all your work within 60 days.

9     I want to have a control.

10         And so let's see.  Today is January 23rd.  The last

11    week in March, David.

12         THE CLERK:  March 28th at 11 a.m.

13         THE COURT:  March 28th at 11 a.m.  That will be for

14    control purposes.  We'll review the status then and see how

15    much more time they need, see what else is going on in the case

16    then.

17         That takes care of what I want to do today.

18         Ms. Shroff, does anybody want to take an appeal from

19    Judge --

20         MS. SHROFF:  We do, your Honor.

21         THE COURT:  You want to do that today?

22         MS. SHROFF:  Yes, please.  I'm ready to do it now.

23         THE COURT:  OK.

24         Any other business to transact?

25         MR. DUBIN:  Yes, Judge.  Mr. Bogdanovic has a broken

I1NAKOSHps

jaw.  He was arrested, brought into the district four days ago.

I placed that fact on the record before Magistrate Pitman.  He

has trouble speaking, of course, with his jaw wired closed.  He

cannot consume solid food.  I've spoken to the government about

it.  And even though he's seen a doctor at the MCC, no action

has been taken.  So I would ask your Honor to -- I believe your

Honor could enter an order directing the medical staff at the

MCC to have him taken to, I'm assuming it would be Downtown

Beekman, so that he can have the operation necessary to take

the wiring out of his jaw.

THE COURT:  Ms. Geddes, rather than making an order,

I'll ask Ms. Geddes on behalf of the government to inquire of

the Bureau of Prisons about the status of Mr. Bogdanovic's jaw

and what steps have to be taken to make sure that he gets the

proper treatment.

MS. GEDDES:  Yes, your Honor.  We've actually e-mailed

with the counsel at MCC this morning, just after speaking with

his counsel, and they are reaching out to the prison medical

staff to find out what's going on and fix the situation.

THE COURT:  OK.  And when do you anticipate getting a

definite answer?  Ms. Geddes?

MS. GEDDES:  The counsel at MCC didn't say when he

would have an answer.  We anticipate in a day or two, and will

follow up by phone later on to confirm.

THE COURT:  Would you submit a written report by, make

I1NAKOSHps

 1   it the 30th of January.  It's a week from today.

 2          MS. GEDDES:  Yes, your Honor.

 3          THE COURT:  And, Mr. Dubin, if you're not satisfied

 4   then, I'll consider entering an order at that time.

 5          MR. DUBIN:  All right.  Thank you, Judge.

 6          THE COURT:  Ms. Todd, I saw that Mr. Francese --

 7          MS. TODD:  Has arrived.  Yes, your Honor.

 8          THE COURT:  We'll arraign Mr. Francese.

 9          MS. TODD:  Yes, your Honor.  He's reviewed the

10   indictment.  We waive its public reading.  And he enters a plea

11   of not guilty.

12          THE COURT:  A plea of not guilty will be entered for

13   Mr. Francese.

14          What happened to you, Mr. Francese?

15          DEFENDANT FRANCESE:  Your Honor, I thought the R train

16   was running.  I usually go through to Staten Island.  I take

17   the train to the R train.  The R train wasn't running, so I

18   took the ferry.  And I didn't know how far it was.  I ran all

19   the way from the ferry here.  Started out at 8 o'clock.

20          THE COURT:  Now you know where we are.

21          DEFENDANT FRANCESE:  Yes, sir.

22          THE COURT:  You'll be on time.

23          DEFENDANT FRANCESE:  Yes, sir.  I'm so sorry.

24          THE COURT:  All right.  Anybody else want to

25   participate in the bail hearing?

I1NAKOSHps

1        MS. GEDDES:  Your Honor, before you proceed to that,

2   so that we don't forget at the end, the government would move

3   to exclude time through March 28 so that the defendants can

4   begin to review discovery, consider any motions that they may

5   want to make, and have potential pretrial disposition

6   discussions with the government.

7        THE COURT:  Any objection?

8        MR. DE CASTRO:  No objection.

9        MR. WOMBLE:  No objection.

10       MS. SHROFF:  No, your Honor.

11       THE COURT:  For the reasons stated, the time between

12  now and January -- excuse me -- March, what's the date?

13       THE CLERK:  28th.

14       THE COURT:  -- March 28 will be excluded.  It's in the

15  interests of justice to do so.  Those interests outweigh the

16  interests of the public and the defendant in a Speedy Trial.

17       Now, you're free to stay for the bail hearing.  Those

18  of you who want to go can leave.

19       Mr. Kosic, you'll want to stay.

20       Marshals, thank you.

21       A MARSHAL:  You're welcome, your Honor.

22       (Pause)

23       THE COURT:  All right, Ms. Shroff.

24       MS. SHROFF:  Thank you, your Honor.

25       Your Honor, as the Court is aware, we were before

I1NAKOSHps

1   Magistrate Judge Pitman, and Magistrate Judge Pitman, at the

2   end of a rather long bail hearing, stated to the Court and to

3   us that essentially the facts as he knew them and as he had

4   heard them were in equipoise and it was the presumption of

5   detention that led him to detain Mr. Kosic.

6           I ask the Court to consider that perhaps Judge Pitman,

7   who is normally right, did not come out the proper way in this

8   case and reverse the ruling below and order Mr. Kosic released

9   on the conditions proposed by Pretrial Services.

10          I note first and most importantly, your Honor, that I

11  will not be repeating the facts below, and I hope the

12  government adheres to the same.

13          The issue before the Court right now, with the facts

14  in the way that they are presented to you, is whether or not

15  bail is proper here.  It is a de novo review, and you need not

16  find that Judge Pitman was in error or his ruling was in error.

17  The ruling is de novo here.

18          So the most important facts here, your Honor, and,

19  again, I said this below and I just say it very briefly,

20  Pretrial Services, who has been doing this far longer than

21  Ms. Geddes, Ms. Lake, or I, as long as the Court has been doing

22  it, recommends release.  The recommendation still stands.

23  After a very protracted bail hearing, Ms. Blackford has not

24  changed her recommendation in any way.  The reason there is no

25  change in the recommendation is because the Bail Reform Act is

I1NAKOSHps

1    clear.  The Bail Reform Act asks that bail be set to assume

2    that there's always a risk -- there is always a risk of

3    dangerousness and there is always a risk of flight.  The

4    question is whether or not there is no risk.  The question is

5    whether there are reasonable measures that can be put into

6    place to reasonably assure that Mr. Kosic will return to the

7    Court.

8         And, look, if I concede every single fact that the

9    government wants to offer, every single fact about the strength

10   of their case, every single fact about their line sheets, which

11   they refuse to turn over, every single fact about all of what

12   they know about this investigation, the fact that they left

13   Mr. Kosic out for more than a year -- they left him out.  They

14   decided the timing of the takedown.  They decided when to

15   arrest him.  They decided where to watch him.  And they decided

16   that this was the time to arrest him.  That is on them.  But

17   they cannot then now argue that, because of whatever reason

18   that led them to leave him out for so long, he is now suddenly

19   a graver danger to society or he is a risk of flight.

20         Mr. Kosic has family present here in court today which

21   was not present at the initial bail hearing.  I do not think

22   that changes the analysis.  The three gentlemen in the back

23   row -- the gentleman raising his hand is his father.  Next to

24   him is his uncle.  And next to him is a family friend.  They

25   are here to tell the Court that they assume the risk, the risk

I1NAKOSHps

1    of watching over Mr. Kosic, the risk of making sure that

2    electronic monitoring, home detention, home incarceration is in

3    place, that Mr. Kosic may not leave his home without

4    permission, that nobody can enter their home without their

5    consent or their permission.  And therefore, the conditions

6    recommended by Pretrial Services are sufficient to ensure that

7    there is no risk of danger and there is no risk of flight.

8              And I just want to add one last fact on the risk of

9    danger.  The government, as Judge Pitman has noted repeatedly

10   in the bail below, has been investigating, as they say, this

11   case for more than a year.  I hardly think that there is a

12   single stash house out there that they can now say they don't

13   know about, a single co-defendant that they don't know about,

14   or anything about Mr. Kosic that they don't know about.  For

15   God's sakes, they watched him for more than a year.  They

16   watched him for a year, according to them.  And the state

17   institution watched him before.  And they have all the

18   information from state court.  So what is it that they now no

19   longer know about Mr. Kosic?

20             If the government is to be believed, everyone -- and

21   let's just assume for a moment here that everything they say is

22   true, that their evidence is for sure going to give them a

23   guilty verdict right out of the box, the jury is not even going

24   to leave the box before they convict him.  Let's assume all of

25   that to be true so I do not have to hear from Ms. Geddes again

I1NAKOSHps

about the strength of her case.  I assume it's all true.  The

Bail Reform Act doesn't say that bail is only for the innocent.

The Bail Reform Act says "reasonably assure reasonable

conditions for release."

So what do you have on the column that allows for

release?  You have a family that has lived in Staten Island

their entire lives.  You have three people who are here of

elderly age who are willing to look over Mr. Kosic.  You have

Mr. Kosic, who has a heart condition.  And the government was

in fact incorrect before when they say he has no history of

use.  He in fact did have a prior history of use that he has

been attending to.  You have an American citizen.  You have a

home.  And you have pretrial, saying that there are conditions

that could be set.  So I ask the Court to set those conditions,

allow Mr. Kosic to be on home incarceration, whatever the

conditions the Court wants to impose is fine with us, and of

course that he will be detained until release and until we can

get those conditions met.

Thank you, your Honor.

THE COURT:  Ms. Geddes.

MS. GEDDES:  Thank you, your Honor.  As your Honor

knows, this case is a presumption case where there is a

presumption that no set of conditions will ensure the safety of

the community or the defendant's appearance in court.  The

government believes here that that presumption cannot be

I1NAKOSHps

overcome.  This defendant is the leader of all the defendants

who were arrested, and he is responsible for distributing

nearly a kilogram per month of heroin that was laced with

fentanyl.  All of that came through Kosic to the other

defendants and then to individuals on the streets.

Conservatively, we estimate that he was selling heroin

to his co-defendants for approximately $120,000 per month.

That's based on the amounts and the prices that were

intercepted during the investigation.  And that's also based on

a conservative estimate of 3,000 bundles of heroin per month.

3,000 bundles of heroin is 30,000 doses that are flooding the

streets every month.  And for these charges he's facing a

ten-year mandatory minimum sentence.

Mr. Kosic was not a hands-off participant.  He sold on

a daily basis.  And he knew how to insulate himself.  He didn't

keep the narcotics in his house.  His house was not the stash

house.  But he controlled the other stash houses.  One was in

an apartment in Brooklyn until he started renovating it.  And

then he gave a discount for narcotics to a co-defendant for

keeping the drugs at that co-defendant's house.

The government is aware of at least four deaths tied

to drugs supplied by Kosic to his co-defendants and then to the

victims.  And, as the government said for the hearing with

Judge Pitman, Mr. Kosic did not have to know about those deaths

to be responsible.  If the government can prove that those

I1NAKOSHps

1    drugs killed those victims and if the drugs came from him, he

2    is facing a 20-year sentence for any of those four deaths.

3              But the fact is, he did know that his narcotics that

4    he was selling, the heroin, the fentanyl, were causing people

5    to overdose.  His own co-defendant, who was just sitting here a

6    few minutes before you, overdosed on narcotics supplied by

7    Kosic.  He survived.  Mr. Kosic knew about this overdose, and

8    he continued to sell heroin after it.

9              And while some of the individuals before you were

10   users of heroin, Mr. Kosic was not.  The government isn't

11   saying he didn't use any narcotics.  But he was not an addict

12   in the same way that some others were.  He wasn't doing this to

13   feed an addiction to heroin.  He was doing it for profit.

14             As the Pretrial Services report points out, he has had

15   no legitimate employment.  He's been unemployed for seven

16   years.  His employment has been selling drugs.

17             Home confinement or any sort of release would allow

18   him to keep selling, and he would remain a danger to the

19   community.  On the day of the arrests, there were ten bundles

20   of heroin -- that's 100 glassines -- in the toilet at his

21   house, where he and a co-defendant had been arrested.

22             The supplier who supplied Mr. Kosic with these large

23   quantities of heroin is still at large.  Some of the people

24   that Mr. Kosic sold to are still at large, and some of them are

25   not yet identified.  They were intercepted on the wires.  We

I1NAKOSHps

1  know that he was selling to them.  But the people behind the

2  phone numbers have not yet been identified.

3          And unlike street-level dealers, who were the ones who

4  have the long rap sheets and get arrested and have the criminal

5  histories, Kosic kept himself removed, and he doesn't need to

6  be on the street to continue selling narcotics.  He can do it

7  through a phone.  And in fact, there were times intercepted on

8  the wire where, just from his phone, he coordinated sales.  He

9  put co-defendants in touch.  He told them when and where to

10  meet, went back and forth, telling them the price, telling them

11  where to meet each other.

12          The weight of the evidence here, as Ms. Shroff

13  mentioned, is strong.  There are months of wiretaps.  There is

14  seized heroin, which tested positive for fentanyl as well.

15  There are statements from co-conspirators describing

16  Mr. Kosic's role here as a supplier to everyone else.  And as I

17  noted earlier, the sales would be approximately $120,000 a

18  month to his co-defendants.  There was very little money

19  recovered from the defendant.  We believe that he has cash

20  somewhere.  We don't know where.  He didn't talk about where he

21  hides money on the wire.  But we believe he has resources

22  hidden.  He has ties to a foreign country.  He is a U.S.

23  citizen and has lived here, but he speaks Albanian.  He could

24  go to another country.

25          THE COURT:  He was born here, wasn't he?

I1NAKOSHps

1          MS. GEDDES:  He was born here, yes, your Honor.  He

2    has family from another country, and there are communications

3    where he spoke a foreign language.  So it would not be a jump

4    to think that, facing ten years or 20 years, he would decide to

5    flee to another country, particularly if he has hidden assets.

6          THE COURT:  Judge Pitman made no finding about flight,

7    did he?

8          MS. SHROFF:  He did, your Honor.

9          THE COURT:  Ms. Shroff.

10         Did he make any findings about flight?

11         MS. GEDDES:  I don't believe that he explicitly said

12   whether he was detaining based on flight or --

13         THE COURT:  I thought it was limited to dangerousness.

14         MS. GEDDES:  It may have been, your Honor.

15         The final point I will make is that, in response to

16   Ms. Shroff's point that the government must not think he's that

17   dangerous because we left him out for a year, I think it's

18   fairly common-sense that when the investigation began, we did

19   not have all the defendants identified yet.  We learned of

20   their roles as the investigation went on and indicted everyone

21   once we felt that we had sufficient evidence to do so.  So the

22   fact that he has been out for some portion of the government's

23   investigation is evidence of nothing here.  The government does

24   believe that he's a danger.  We believe that there are deaths

25   that are tied to him.  And we believe that he is a risk of

I1NAKOSHps

1    flight and, most importantly, a danger to the community if he

2    is released.

3              THE COURT:  Ms. Blackford?

4              MS. SHROFF:  Ms. Blackford isn't here, your Honor.

5              MS. HARMON:  Your Honor, Lea Harmon from Pretrial

6    Services.

7              THE COURT:  Yes.

8              MS. HARMON:  I don't have anything to add, your Honor.

9              THE COURT:  OK.  Ms. Shroff.

10             MS. SHROFF:  Your Honor, may I just briefly respond?

11             THE COURT:  Yes.

12             MS. SHROFF:  Thank you.  I have to say, I am really

13   surprised by this argument that because he supposedly speaks a

14   foreign language, somehow he's a greater danger of flight.  I

15   speak five languages.  I don't think I'm in danger of any risk

16   of flight ever.  But I don't think that's a good argument to

17   make.  It sort of puts immigrants at greater risk of detention

18   than American citizens who are born as Americans rather than

19   naturalized.

20             And it's even worse to make that kind of an argument

21   when Mr. Kosic is an American that was born here and happens to

22   speak a foreign language.  He has absolutely no family in

23   Albania that would be of relevance here.  His immediate family

24   is seated in the court and lives here.

25             I'm not going to further address that kind of an

I1NAKOSHps

argument here.  And I hope the Court does not give it any

countenance.

        I do want to emphasize that Judge Pitman, in light of

all of the same arguments -- and now they have changed the drug

amount to what they found at the house and conceded it is in

fact glassine.  I want to just direct the Court that, at page

58 of the transcript below, right, Judge Pitman specifically

noted that the kind of evidence that you would normally see

when labeling someone a leader -- and they keep doing this,

with absolutely no proof that he is the leader.  And as I tried

to explain to Judge Pitman, and I could do so here again, they

literally have no proof.  In fact the proof is to the contrary.

They keep talking about the overdose of Shaun Sullivan.  And

Shaun Sullivan has use.  Shaun Sullivan has criminal history

that is so old that my client was not even born at the time

that Mr. Sullivan started using and selling.

        To attribute to Mr. Kosic the actions of a man who is

old enough to be his father and has an addiction history and a

sale history that predates his birth is ridiculous.  Mr. Kosic

is not responsible for the actions of another.  And I am sure

that, had Mr. Sullivan's lawyer stood up here and said, my

client did this because of addiction, the government would say,

well, that's really just too bad, it's still a crime to be an

addict and use.

        So for them in this bail application to somehow try

I1NAKOSHps

1   and communicate to the Court that bail is different for an

2   addict versus somebody who's doing it for money -- and frankly

3   they don't even have proof of that -- is simply not proper.

4           Let me address two other arguments that they've made.

5   They argue that somehow Mr. Kosic is completely capable of

6   still selling drugs, by use of a phone.  Fine.  No problem.  We

7   will agree to a condition that Mr. Kosic not use the phone.  We

8   will agree to a condition that there be only a landline in the

9   home and that the landline be monitored and that the landline

10  be used by his father to inform us.  And we can even arrange,

11  if the Court wants, for attorney visits that are preset so he

12  doesn't have to even use the phone to contact us.  If that's

13  really the government's argument, that he can use the phone to

14  sell drugs, we are happy to have the Court consider a condition

15  that would eliminate such a risk.

16          I don't think that's how the criminal history of the

17  other defendants is explained.  And I do not think that the

18  government has properly overcome even the basic "clear and

19  convincing evidence" threshold to show that he is a leader.

20          Again, there is no indication that Mr. Kosic was the

21  only person that the other co-defendants bought from.  In fact,

22  they know that that's not true.  They know that the other

23  co-defendants that they have arrested sold other drugs and they

24  bought other drugs, including heroin, from other suppliers.  So

25  to say that Mr. Kosic is somehow the ringleader or somehow had

I1NAKOSHps

1  anything to do with what the others arrested here did is simply

2  not true.

3          Finally, your Honor, they keep talking about how these

4  deaths are somehow related to Mr. Kosic.  Their charging

5  instrument belies that claim, number one.  But, number two, the

6  government just told you that they could only do their takedown

7  after they developed evidence.  That's not the only criteria

8  for the government to develop the timing of their takedown.

9  The government may decide, in their own wisdom, that, look, a

10  person is just so dangerous, we do not need to wait until we

11  have 11 other people to arrest.  They could have arrested

12  Mr. Kosic at any time.  In fact, they chose when to arrest him.

13  They chose to have their investigation be wider.  They chose

14  when they made this arrest.  They didn't even arrest Mr. Kosic

15  separately and charge him separately.  Why?  Because they

16  wanted a bigger investigation.  And they only put their bigger

17  investigation as a priority when there is not a danger that

18  they are uncomfortable living with.  The fact that they left

19  him out for a year shows that the government itself is

20  comfortable having Mr. Kosic out.  That's why they left him

21  out.

22          I do believe I've overcome the presumption and I ask

23  you to set bail.  Thank you, your Honor.

24          THE COURT:  Ms. Geddes, why are the conditions which

25  Mr. Kosic suggests not adequate to guarantee that there won't

I1NAKOSHps

1    be any danger in his release?

2              MS. GEDDES:  Your Honor, the suggestion that he could

3    be ordered not to have phones, I'm not sure how they would be

4    enforceable.  He has had multiple phones throughout this

5    investigation, burner phones, personal phones.  I think it

6    would be difficult for Pretrial Services to ensure that he has

7    no cellphone hidden somewhere that he is using to conduct

8    business.  And there is just no way of knowing if he is

9    complying with that condition.

10             THE COURT:  That's one.  Anything else you want to say

11   about the conditions that Ms. Shroff said she'd agreed to on

12   behalf of her client?

13             MS. GEDDES:  Well, the conditions that Pretrial

14   Services had suggested, such as home incarceration, for the

15   same reason, the government doesn't believe that that would

16   stop him from continuing to be a threat to the community.  He

17   lived in this house before, and he committed these crimes,

18   including through the phone, as the government explained

19   before.  So keeping him in that house would not solve the

20   problem.

21             THE COURT:  All right.

22             MS. SHROFF:  Your Honor, look, pretrial does visits.

23   They do surprise visits.  And if Mr. Kosic were to even violate

24   a single condition of the bail, this Court has the power to

25   remand him.

I1NAKOSHps

```
1              THE COURT:  Thank you.  I'll take a short recess.

2              MS. SHROFF:  Thank you, your Honor.

3              (Recess)

4              THE COURT:  I thank the parties for their argument.

5         I have read the transcript of the proceedings before

6    Magistrate Judge Pitman last week on January 18th.  I've heard

7    Ms. Shroff and Ms. Geddes take their arguments today.  I've

8    read the Pretrial Services report involving Mr. Kosic.

9              After appropriate consideration, I agree with

10   Magistrate Judge Pitman.  This is a presumption case.  And I

11   share his conclusion that the defendant has not rebutted the

12   presumption.

13             I'm going to continue the detention order, primarily

14   as Magistrate Judge Pitman found, on the risk of dangerousness.

15   Mr. Kosic will be detained pending trial.  The drugs involved

16   in this case, the mixture of heroin and fentanyl, are extremely

17   dangerous.  Its distribution presents a grave danger to the

18   community.  So I'm going to direct that the detention of

19   Mr. Kosic be continued.

20             That's my findings and conclusions of law.

21             Thank you.

22                              o0o

23

24

25
```