UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :

   UNITED STATES OF AMERICA          :

                                          :

         - v. -               :

                                          :      S4 18 Cr. 30 (PAC)

   PAUL VAN MANEN and             :
   KENNETH CHARLTON,          :

                                          :

              Defendants.        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## THE GOVERNMENT'S REPLY IN FURTHER SUPPORT OF ITS MOTIONS *IN LIMINE*

GEOFFREY S. BERMAN
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Catherine E. Ghosh
Ryan B. Finkel
Jessica K. Fender
Assistant United States Attorneys
    *– Of Counsel –*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT ......................................................................................................................... 1

   I. Van Manen's Proposed Experts Should Be Precluded from Testifying ................................ 1

   II. Co-Conspirator and Victim Statements Are Admissible ................................................... 5

      A. Co-Conspirator Statements Are Admissible ............................................................... 5

      B. Victim Statements Are Admissible ............................................................................ 6

      C. Excited Utterances by Witness-1 Are Admissible ....................................................... 7

   III. Certain Cross-Examination Should Be Precluded ......................................................... 10

      A. The Defendants Do Not Oppose the Government's Motion to Preclude Certain Cross-
      Examination on Collateral Issues ................................................................................ 10

      B. Cross-Examination That Solicits Out-of-Court Statements Should Be Precluded ......... 10

   IV. The Defendants Do Not Oppose Preclusion of Arguments Concerning the Punishment Faced
   If Convicted ................................................................................................................. 10

   V. Van Manen's Contrary Proffer Statements Are Admissible ............................................. 11

   CONCLUSION ................................................................................................................... 12

## PRELIMINARY STATEMENT

The Government respectfully submits this reply memorandum in further support of its motions *in limine* (Dkt. No. 181 (the "Motion")).  In their opposition, Defendants Paul Van Manen and Kenneth Charlton concede (either expressly or by not opposing the Government's Motion) that certain prior seizures of heroin and convictions are admissible, that cross-examination of CW-3[1] on certain collateral issues should be precluded, and that the defendants should not be permitted to make arguments concerning the punishment they may face if convicted.  (Dkt. No. 191 ("Def. Opp.").)  Thus, these motions should be granted.

For the reasons stated below and in the Government's Motion, the Court should also grant the Government's remaining motions *in limine* in their entirety.

## ARGUMENT

### I.  Van Manen's Proposed Experts Should Be Precluded from Testifying

In his letter in opposition, Van Manen retreats and, tacitly admitting that the opinions described in the Taff Report would be inadmissible, argues that the Taff Report does not reflect the scope of Dr. Taff's testimony.  To be clear, then, the Government understands that the opinions in the Taff Report will not be introduced by Van Manen at trial; in any event, for the reasons set forth in the Government's Motion, those opinions should expressly be precluded by the Court.

Van Manen offers a terse two-sentence summary belatedly attempting to revise the scope of Dr. Taff's potential testimony:

> Dr. Taff would testify regarding the proper and appropriate manner to conduct an autopsy and the proper and appropriate process by which autopsy reports are prepared and maintained in the normal course of business. Dr. Taff would respond to the specifics of

---

[1] Terms defined in the Government's Motion are assigned the same meaning in this memorandum.

> Dr. Cederroth's testimony to the extent it goes beyond what is set forth in the government's notice or not supported by the autopsy report.

(Def. Opp. at 2.)  Van Manen also, for the first time, disclosed that he "may" call Robert H. Powers, Ph.D., "as an expert in the field of Forensic Toxicology."  (*Id*. at 3.)  Although the parties are less than two weeks from trial, no further information concerning the scope of Dr. Powers' potential testimony was provided; instead, Van Manen's counsel has indicated they will provide additional information at a later date.

Van Manen's notice as to both Dr. Taff and Dr. Powers is insufficient.  A defendant must "give to the government a written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence as evidence at trial."  Fed. R. Crim. P. 16(b)(1)(C).  "This summary must describe the witness's opinions, the bases and reasons for those opinions, and the witness's qualifications."  *Id.*  Van Manen's disclosures do not meet these requirements.

As an initial matter, there can be no dispute that the disclosure concerning Dr. Powers is insufficient, because the scope of his testimony has not been disclosed, at all.  Given that there is no disclosure regarding Dr. Powers' testimony, the Government cannot discern if his testimony is even proper, let alone adequately prepare for it.

As to Dr. Taff, the vague assertion that he will respond to Dr. Cederroth and testify about procedures concerning autopsy reports generally is insufficient to place the Government on notice about the specifics of his testimony.  *See, e.g.*, *United States v. Valle*, No. 12 Cr. 847, 2013 WL 440687, at *5 (S.D.N.Y. Feb. 2, 2013) ("Merely identifying the general topics about which the expert will testify is insufficient; rather, the summary must reveal the expert's actual opinions.");

*United States v. Duvall*, 272 F.3d 825, 828 (7th Cir. 2001) ("The Rule requires a summary of the expected testimony, not a list of topics.").[2]

The failure to provide adequate notice at this late stage is sufficient cause for preclusion. *See, e.g.*, *Valle*, 2013 WL 440687, at *5; *United States v. Mahaffy*, No. 05 Cr. 613, 2007 WL 1213738, at *2 (E.D.N.Y. Apr. 24, 2007); *United States v. Ferguson*, No. 06 Cr. 137, 2007 WL 4539646, at *1 (D. Conn. Dec. 14, 2007). The expert disclosure provisions of the Federal Rules exist to allow counsel the opportunity to challenge the admissibility of testimony, adequately prepare for cross-examination, and decide whether to retain and prepare rebuttal witnesses. *See, e.g.*, *United States v. Rajaratnam*, No. 09 Cr. 1184, 2011 WL 723530, at *3 (S.D.N.Y. Feb. 25, 2011) ("[T]he purpose of reciprocal expert disclosures is 'to minimize surprise that often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merit of the expert's testimony through focused cross-examination.'" (quoting Fed. R. Crim. P. 16 Advisory Committee's Note)); *Valle*, 2013 WL 440687, at *5 (same); *United States v. Day*, 524 F.3d 1361, 1372 (D.C. Cir. 2008) (same).

Van Manen's disclosure suggests that aspects of Dr. Cederroth's autopsy, or the resulting report, were somehow improper but provides no specific critique, nor does Van Manen move in any way to preclude Dr. Cederroth or the Government's other noticed expert, Dr. Kardijian, from

---

[2] In stark contrast, the Government's disclosure to the defense concerning Dr. Cederroth specified her opinions and the bases for them: "Dr. Cederroth would testify that the cause of the death of Michael Ogno was acute intoxication by the combined effects of fentanyl, heroin and alprazolam. A more detailed summary of her conclusions regarding the autopsy's results and findings, the nature and extent of the injuries observed, and the cause and manner of the death, and the bases and reasons for those conclusions, is set forth in the official Report of Autopsy previously produced to the defendants and bearing Bates stamps USAO_012609-35. Dr. Cederroth is also expected to describe the process by which autopsy reports are prepared and maintained in the normal course of her business as a Medical Examiner." (Letter to defense counsel, dated April 1, 2019 at 1.)

testifying.  At bottom, Van Manen's belated, two-sentence disclosure does not enable the Government to properly prepare for Dr. Taff's potential testimony, as it leaves the Government in the dark as to the specifics of the testimony.  That is especially true because Van Manen previously offered a substantial, but now abandoned, ten-page expert report from Dr. Taff about a variety of improper topics that the Government sought to preclude, many of which the defense could conceivably argue continue to fall under Van Manen's vague definition of the "appropriate manner to conduct an autopsy."[3]

In any event, even assuming *arguendo* that Van Manen provided sufficient notice of Dr. Taff's testimony—which he has not—that testimony remains inadmissible.  Based on Van Manen's revised disclosure, Dr. Taff now purportedly will describe how autopsy reports "are prepared and maintained in the normal course of business."  (Def. Opp. at 2.)  But there is no indication in Van Manen's disclosure (either the most recent version or the one he has abandoned) that Dr. Taff works, or worked, at the New York Office of the Chief Medical Examiner ("OCME") or that he is an expert on this topic, as would be required for him to opine in a manner helpful to the jury.  Instead, this topic is appropriate, if at all, as a topic to be explored during the defense's cross-examination of Dr. Cederroth.

---

[3] *See, e.g.*, Taff Report, ¶ 9 ("The manner of death is ruled 'accident' in the majority of drug overdoses investigated by medical examiners. Some accidental drug overdoses turn out to be suicides when medical examiners make the effort to subpoena decedents' ante-mortem medical and psychiatric records"); ¶ 9 ("During the current opioid epidemic, several medical examiners have been pressured by prosecutors to rule the manner of opioid overdoses as homicides"); ¶ 9 ("Although 3 different drugs were found in [Ogno]'s body fluids and tissues, there is no way a medical examiner can say with any certainty the source of the drugs (*e.g.* opiates are opiates are opiates on a drug screen) or the motive for taking the drug (recreational or suicidal)"); ¶ 12 (explaining some medical examiners believe tobacco- and alcohol-caused deaths should be classified as suicide).

Accordingly, both of Van Manen's proposed experts should be precluded from testifying at trial.

## II.  Co-Conspirator and Victim Statements Are Admissible

### A.  Co-Conspirator Statements Are Admissible

The defendants claim that they are unable to respond to the Government's Motion seeking admission of co-conspirator statements because the Government did not provide the specific statements it seeks to introduce.  (Def. Opp. at 7.)  To the contrary, the Government detailed the various types of co-conspirator statements at issue, which will be drawn from months' worth of wiretaps, as well as testimony from cooperating witnesses regarding discussions they had with the defendants and other co-conspirators.  As the Government further explained, this evidence

> will also include similar statements made by individuals who were not charged in this conspiracy but who discussed with Van Manen, Charlton, or their co-defendants such things as taking orders for narcotics, evading law enforcement detection, purchasing narcotics on consignment, the quality and strength of the narcotics, and the process and timing for the defendants to obtain new supplies of narcotics.

(Motion at 27.)  Given the volume of communications at issue during the course of this long-running conspiracy, the Government cannot possibly catalogue every co-conspirator statement to which cooperating witnesses or recordings might refer, but the Government nonetheless has provided sufficient background and facts from which the Court may evaluate the admissibility of the statements at issue.

Moreover, the Second Circuit has made clear that "statements proffered as co-conspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" establishing that a conspiracy involving the defendant existed.  *United States v. Tracy,* 12 F.3d 1186, 1199 (2d Cir. 1993) (citing *United States v. Geaney,* 417 F.2d 1116,

1120 (2d Cir. 1969)).   Thus, the Court also has the option of holding in abeyance its final

determination on particular statements until the close of evidence.[4]

### B.   Victim Statements Are Admissible

The defendants similarly claim that the Government did not identify which victim

statements from overdose victim Michael Ogno it will seek to introduce.   While the Government

did not include a comprehensive list of such statements (which is not required), it explained that

> [t]he text messages the Government seeks to introduce reflect drug
> transactions, in which Ogno requests to meet to purchase drugs, to
> receive drugs on credit, or to barter for narcotics.   The responses
> from Van Manen and his co-conspirators are typically brief
> statements giving updates on Van Manen's location and timing (e.g.,
> "about 45 minutes"; "here") or discussing the amount of heroin
> Ogno wants to buy ("4 min what ya need").

(Motion at 29.)   These statements, as well as Ogno's statements on certain intercepted calls from

the wiretaps, are not offered for their truth, and thus, are not hearsay at all.   For example, it is

immaterial whether Ogno really was in the location he said he was, or really had the amount of

money he said he did; rather, these types of statements will be offered to provide context for the

statements of a party opponent: Van Manen, who responded to such messages (for example) by

agreeing to meet with and sell certain quantities of narcotics to Ogno.[5]

---

[4] The two prerequisites for a co-conspirator statement to be admissible—that the defendant and
declarant be members of a conspiracy and that the statement be in furtherance of that conspiracy—
need be proved only by a preponderance of the evidence.   *United States v. Orena*, 32 F.3d 704,
711 (2d Cir. 1994); *see also United States v. Padilla*, 203 F.3d 156, 162 (2d Cir. 2000).

[5] Furthermore, Ogno's questions to Van Manen (such as Ogno asking when Van Manen would
arrive) are categorically not hearsay.   *See United States v. Dominguez-Gabriel*, 511 F. App'x 17,
20 (2d Cir. 2013) ("questions posed—rather than statements made—by [non-testifying
government informant] . . . do not constitute hearsay.") (citing Fed. R. Evid. 801(a), (c)).

6

The defendants next argue that statements made by Ogno to Van Manen in the course of arranging heroin transactions were not against Ogno's penal interest, claiming without any supporting case law that these statements are too "vague and equivocal to be incriminating."  (Def. Opp. at 8.)  But of course, regardless of how explicit Van Manen's and Ogno's language was during their drug deals, Ogno's statements arranging drug deals are plainly against his penal interest.  The defendants do not, and cannot, dispute that drug possession is illegal under New York law (N.Y. Penal Law § 220.03); thus, such statements are precisely the type of statements that are admissible under Rule 804(b)(3).  *See, e.g.*, *United States v. Lang*, 589 F.2d 92, 97 (2d Cir. 1978) (referencing Fifth Circuit case in which "the court held that an unavailable witness's statement to a cellmate that he knowingly possessed heroin was against his penal interest" because "'[w]e do not think that a reasonable man would falsely admit the commission of a serious crime to his cellmate, knowing that there was a chance, even if slight, that this admission could be used to convict him and subject him to such severe penalties.'" (quoting *United States v. Bagley*, 537 F.2d 162, 165 (5th Cir. 1976))).

### C.  Excited Utterances by Witness-1 Are Admissible

The defendants do not and could not dispute that Witness-1's statements that Ogno "OD'ed" and that "it was Paul" were made after a startling event and relate to that startling event. Rather, the defendants contest the admission of Witness-1's statements only on the ground that Witness-1 lacked personal knowledge of the events about which the statements were made.  The defendants' position is legally and factually meritless.

The Rule 602 threshold is not an insurmountable obstacle.  Rather, it is a relatively low bar.  Indeed, while "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter," Fed. R. Evid. R. 602,

7

that standard is satisfied where "a reasonable trier of fact could believe the witness had personal knowledge." *United States v. Tocco*, 135 F.3d 116, 128 (2d Cir. 1998) (citation and quotation marks omitted); *see also 405 Condo Assocs. LLC v. Greenwich Ins. Co.*, No. 11 Civ. 9662 (SAS), 2012 WL 6700225, at *4 (S.D.N.Y. Dec. 26, 2012) (noting the Rule 602 threshold is low, requiring "only enough" for "some rational juror" to conclude the witness has personal knowledge). No more is required. Moreover, "personal knowledge of a fact 'is not an absolute' to Rule 602's foundational requirement, which 'may consist of what the witness thinks he knows from personal perception.'" *United States v. Cuti*, 720 F.3d 453, 458–59 (2d Cir. 2013) (quoting Fed. R. Evid. 602 Advisory Committee Notes).

Here, Witness-1 had personal knowledge of the facts underlying her excited utterances, and thus her statements satisfy Rule 602. The Government expects that Witness-1 will testify that, at the time of Ogno's death, she had shared a romantic relationship with Ogno for more than a year. *See* Fed. R. Evid. 602 ("Evidence to prove personal knowledge may consist of the witness's own testimony."). During the course of that relationship, Witness-1 personally observed Ogno use heroin, and was privy to his statements against penal interest when he confessed to her that he struggled with addiction. Witness-1 also personally witnessed Ogno's struggles, as she tried to get him to a rehabilitation center so that he could stop abusing heroin. Indeed, Ogno explicitly informed Witness-1 that there was naloxone (a drug to revive someone who has overdosed) in his bedroom. In the months leading up to Ogno's overdose, Witness-1 also observed that he was like a "zombie," struggling with his heroin addiction. Indeed, the night before Ogno died, Witness-1 and Ogno got into a fight about his heroin use.

Not only did Witness-1 have ample personal knowledge of Ogno's heroin use, but she also knew who Ogno's heroin dealer was. In particular, on several occasions, she drove Ogno to "Paul"

8

in New Jersey when Ogno was seeking to obtain heroin to avoid getting "dope sick." She also overheard a number of conversations between Ogno and other heroin users in which they discussed their drug use and their drug suppliers. And on at least one occasion, Witness-1 was in the car when Ogno was speaking via "Facetime" to his dealer, "Paul," and Witness-1 was able to observe a portion of this person's face. Thus, contrary to the defendants' arguments (Def. Opp. at 9-10), there can be no serious question that Witness-1 was personally familiar with the facts underlying her excited utterances.

With that backdrop, after being unable to contact Ogno for much of the day on December 1, 2017—the day after Witness-1 and Ogno had had a fight about Ogno's ongoing heroin use— Witness-1 found Ogno dead on the floor of his bedroom. She screamed that he had "OD'ed" and that "it was Paul." As the above facts demonstrate, there is more than sufficient evidence from which "some rational juror" could conclude that Witness-1's statements were based on her personal knowledge[6] or reflected what Witness-1 "thinks [s]he knows from personal perception.'" *See Cuti*, 720 F.3d at 458–59 (quoting Fed. R. Evid. 602 Advisory Committee Notes). Moreover, this is not a situation where the Government seeks to admit statements made by an unavailable declarant. Witness-1 will take the stand. The limits of Witness-1's knowledge will be subject to cross-examination such that the jury can decide how much, if any, weight to assign to Witness-1's statements. *See Crawford v. Washington*, 541 U.S. 36, 61 (2004) (explaining the Confrontation Clause "commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination").

The statements should therefore be deemed admissible as excited utterances.

---

[6] Indeed, as to the scream that Ogno "OD'ed," given what was observed, the statement could also be offered as a present sense impression. *See* Fed. R. Evid. 803(1).

9

### III.   Certain Cross-Examination Should Be Precluded

#### A.   The Defendants Do Not Oppose the Government's Motion to Preclude Certain Cross-Examination on Collateral Issues

The Government moved to preclude cross-examination that does not bear on a witness's credibility and is collateral to the issues at trial.  Specifically, the Government moved to preclude cross-examination of CW-3 regarding a September 1997 arrest for stalking and three convictions (in 2002, 2008, and 2012) for driving under the influence.  (Motion at 33-38.)  The defendants do not oppose this motion, and for the reasons already stated, this motion should be granted.

#### B.   Cross-Examination That Solicits Out-of-Court Statements Should Be Precluded

The Government has asked the Court to preclude any attempt to introduce via cross-examination certain speculative out-of-court statements by lay witnesses.  In making that request, the Government gave examples of the areas of concern.  Nonetheless, the defense claims that the motion is premature, because the Government has not yet produced 3500 material.  Pursuant to the parties' recent agreement, that material is being produced on or before April 22, 2019.[7]  Thus, the Government's motion, to the extent it is not ripe, will be ripe in short order.  The Government therefore renews its request to preclude these areas of cross-examination.

### IV.   The Defendants Do Not Oppose Preclusion of Arguments Concerning the Punishment Faced If Convicted

The Government moved to preclude the defendants from offering evidence or argument concerning the punishment or consequences they face if convicted.  (Motion at 40.)  The

---

[7] The parties have agreed to enter into stipulations regarding the authenticity of various documents and other evidence, and, in exchange, the Government has agreed to provide 3500 materials for its anticipated cooperating witnesses on Thursday, April 18, and 3500 materials for its remaining witnesses by Monday, April 22, 2019 (with additional 3500 materials to be produced on a rolling basis as generated).

defendants do not oppose this motion, and for the reasons already stated, the motion should be granted.

## V.   Van Manen's Contrary Proffer Statements Are Admissible

Van Manen claims that he "will not make or elicit any statement or affirmative assertion at odds with Mr. Van Manen's proffer statement."  (Def. Opp. at 11.)  But certain assertions made in his opposition are themselves contradicted by Van Manen's proffer statements.   "If the defendant makes a factual assertion at trial that contradicts a statement made during the proffer session, the Government may then offer the earlier proffer statement to rebut the assertion being made at trial.  Rebuttal is 'necessarily a flexible concept,' and not 'limited to evidence that directly contradicts what it opposes; rather, rebuttal encompasses any evidence that the trial judge concludes fairly counters and casts doubt on the truthfulness of factual assertions advanced, whether directly or implicitly, by an adversary.'"  *United States v. Rosemond*, 841 F.3d 95, 107-08 (2d Cir. 2016) (quoting *United States v. Barrow*, 400 F.3d 109, 120-21 (2d Cir. 2005)).  If Van Manen persists in advancing arguments or assertions at trial that are inconsistent with his proffer statements, the Government is entitled to offer the proffer statements, under the well-established law set forth more fully in the Motion.

11

## CONCLUSION

For the foregoing reasons, the Court should grant the Government's motions *in limine* in their entirety.

Dated: New York, New York
April 17, 2019

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Catherine E. Ghosh
Ryan B. Finkel
Jessica K. Fender
Assistant United States Attorneys
(212) 637-1114 / 6612 / 2276

12