UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X

UNITED STATES OF AMERICA                              :

                                                      :        18 Cr. 30 (PAC)

    - against -                                  :

                                                      :        **OPINION & ORDER**

MEDIC KOSIC,                                               :

     Defendant.                                 :

-----------------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

     Defendant Medin Kosic ("Defendant," "Kosic") was sentenced to 168 months'

imprisonment and five years of supervised release after pleading guilty to conspiracy to

distribute and possess with intent to distribute one kilogram and more of substances containing a

detectable amount of heroin or fentanyl in violation of 21 U.S.C. §§ 841(b)(1)(A) and 21 U.S.C.

§ 846.  He has served 28 months of that sentence at FCI Fort Dix.  He moves for compassionate

release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), due to pre-existing conditions including heart

disease and an increase in COVID-19 cases at Fort Dix.  Specifically, he asks for a reduction of

his sentence to time served and home confinement as a condition of his supervised release.

     The motion is denied without prejudice to its renewal should Kosic's condition or the

situation at Fort Dix materially worsen.

## BACKGROUND

     Kosic was charged along with 10 co-defendants in a single-count Indictment that was

unsealed on January 17, 2018.  (Dkts. 1, 2).  The defendants were charged with a multi-year

drug-trafficking conspiracy that moved narcotics obtained from a Brooklyn supplier, packaged

and stored them in Brooklyn and Staten Island, and then sold those drugs in Brooklyn, Staten

Island, and New Jersey.  (Dkt. 1, at 2).  On October 1, 2018, Kosic entered a plea of guilty to

conspiracy to distribute and possess with intent to distribute mixtures and substances containing

detectable amounts of heroin and fentanyl from at least in or about 2015 up to and including

January 2018.  (Minute Entry dated Oct. 18, 2018; Plea Tr., Dkt. 115, at 7:17–8:5).

The statutory provisions allowed for a sentence of 10 years to life, the Sentencing

Guidelines set a range between 188 and 235 months, and the Presentence Report ("PSR")

recommended a sentence of 144 months.  (PSR, Dkt. 138, at 19).  The Government asked for a

term of imprisonment within the Stipulated Guidelines in Kosic's plea agreement of 168 to 210

months.  (Dkt. 160, at 1).  This Court at sentencing took note of Kosic's expressions of contrition

and his desire to do good.  (Sent'g Tr., Dkt. 175, at 17:18–25).  At the same time, the Court said

that Kosic had been:

> dealing in major league quantities of drugs for an extended period of time.  You
> continued to deal drugs even after one of your co-conspirators almost died and
> another drug customer did die based on fentanyl, and you kept on dealing with the
> drugs.  And you played a key role in the distribution of these drugs over an
> extended period of time, so I think that the [G]uidelines capture this.

(*Id.* at 18:9–15).

This Court accordingly imposed a sentence of 168 months' imprisonment followed by

five years of supervised release.  (Judgment, Dkt. 161, at 2–3).

## DISCUSSION

### I.     Compassionate Release Standard

While the general rule is that terms of imprisonment may not be amended after they are

imposed, compassionate release motions fall under a limited statutory exception provided by 18

U.S.C. § 3582(c)(1)(A)(i).  *See United States v. Kaba*, 19 Cr. 242 (PAC), 2020 WL 2520807, at

*2 (S.D.N.Y. May 18, 2020).  A court is permitted to modify a prison term when "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i).  To determine what constitutes "extraordinary and compelling reasons," courts are required to look in part to the applicable policy statement from the Sentencing Commission in U.S.S.G. § 1B1.13.

"[C]ompassionate release motions amid the COVID-19 pandemic have required a 'fact-intensive' inquiry made in the 'unique circumstances' and 'context' of each individual defendant."  *United States v. Brady*, S2 18 Cr. 316 (PAC), 2020 WL 2512100, at *3 (S.D.N.Y. May 15, 2020) (internal citations omitted).   A review of cases from the Southern District of New York shows that courts look to factors including the age of the prisoner, his underlying health conditions if any and how he has managed those conditions in prison, whether COVID-19 is widespread in the facility, how much of the prisoner's term has been served, and the sentencing factors in 18 U.S.C. § 3553(a).  *Brady*, 2020 WL 2512100, at *3.  In short, courts are looking to see both that there is a genuine need based in medical fact for a reduction in that specific defendant's sentence, and that releasing the prisoner early will not undo the important social interests expressed in the imposed sentence.  *See United States v. Ebbers*, (S4) 02-CR-1144-3 (VEC), 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) ("Court[s] should be wary of using [a] motion [for compassionate release] to 'correct' the sentencing court's original judgment or introduce unprincipled variance into the execution of duly-imposed sentences.").

## II.   Application

The Government first opposes Kosic's motion on the grounds that he has not fulfilled the procedural requirements of 18 U.S.C. § 3582(c)(1)(A), which state that a motion for release under the subsection may be brought "upon motion of the Director of the Bureau of Prisons" or by the prisoner himself after he has either "fully exhausted all administrative rights to appeal a

failure" of the BOP to bring a motion on his behalf, or the lapse of 30 days after "the receipt of such a request by the warden" of his facility.  Kosic filed his request with the warden of his facility on April 28, 2020.  (Dkt. 352, at 1–2).  There is no record of whether the warden ever responded to these two requests by May 28, 2020, or at all.  In these circumstances, the Court assumes but does not decide that the administrative requirements have been satisfied.

Kosic's preexisting medical conditions do not compel compassionate release in this case.  He asserts that he suffers from hyperlipidemia, hypertension, and coronary artery disease, and that he is obese.  (Dkt. 348, at 2).  He also had a heart attack in May of 2017 and had an arterial stent inserted.  He takes a number of standard medications for his conditions.  (*Id.*).  But Kosic is 32—younger than the individuals thought to be most at risk of serious illness or death from COVID-19—and there has been no indication that he has been unable to manage his conditions while in prison.  (Dkt. 352, at 7).  The Government provided sealed records from Kosic's May 2, 2020 visit to a BOP clinic that showed Kosic was in good health with moderate elevated blood pressure and some concern with regard to his urinalysis.  A follow-up visit was scheduled.  The finding of general good health does not support a finding for compassionate release.

The Government states that as of their May 26 filing, there had been no cases of COVID-19 at the low security facility where Kosic is held.[1]  (Dkt. 352, at 1).  The Government submitted a declaration dated May 18, 2020 from Dr. Nicoletta Turner Foster, the BOP's clinical director at FCI Fort Dix, detailing the BOP and Fort Dix's efforts to prevent and contain COVID-19 transmission, including the screening of new inmates and a temperature and symptom check for

---

[1] The Government says that as of May 26 there had been 58 positive inmate cases and five positive staff cases of COVID-19 at FCI Fort Dix's satellite camp, but that there has been no interaction between inmates at the camp and the low security prison (where Kosic is housed) since March.  (Dkt. 352, at 8).

inmates at Kosic's facility every other day.  (Dkt. 352, Ex. 2).  A separate declaration of May 13,

2020 from Adam Sassaman, FCI Fort Dix's safety and occupational health administrator,

describes the measures undertaken to disinfect housing units and working areas, distribute hand

soap, and restrict visitors at the facility.  (Dkt. 352, Ex. 1, at 3–5).

The factors in 18 U.S.C. § 3553(a) also counsel against granting compassionate release

on Kosic's motion.  A reduction would undermine the goals of the sentence this Court

considered in crafting Kosic's sentence and would provide an undue windfall to Kosic.  *See*

*Brady*, 2020 WL 2512100, at *3–4.  Furthermore, a reduction would create a disparity between

Kosic's sentence, which was already at the bottom end of his plea agreement and in part

reflected the leading role he played in the criminal enterprise, and those of his co-defendants[2]—

an outcome that this Court avoided at sentencing.  (Sent'g Tr., Dkt. 175, at 19:14–16, 19:22–25).

## CONCLUSION

Kosic's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) is denied

without prejudice to its renewal should Kosic's condition or the situation at Fort Dix materially

worsen.  The Clerk of Court is directed to close the motion at Docket 348.


Dated: New York, New York                    SO ORDERED
      June 11, 2020

                                      PAUL A. CROTTY
                                      United States District Judge

---

[2] For example, Kosic's co-defendant Paul Van Manen, who played a lesser role in the narcotics conspiracy but went to trial on Count One, was sentenced to 276 months in prison.  *Van Manen*, 18-cr-30-PAC-3, Dkt. 324 (S.D.N.Y. Oct. 16, 2019).  Co-defendants Michael Nunez and Mirsad Bogdanovic were sentenced to 150 and 160 months in prison respectively.  *Nunez*, 18-cr-30-PAC-12, Dkt. 165 (S.D.N.Y. Mar. 12, 2019); *Bogdanovic*, 18-cr-30-PAC-4, Dkt. 148 (S.D.N.Y. Jan. 30, 2019).